[Cite as *State v. Yu*, 2025-Ohio-2377.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SIQI YU,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case Nos. 24 BE 0037, 24 BE 0041

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 23CR280

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor*, Atty. Jacob A. Manning,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Wesley A. Johnston*, for Defendant-Appellant.

Dated:  June 26, 2025

**Robb, P.J.**

{¶1}   Appellant, Siqi Yu, appeals the August 19, 2024 judgment sentencing him after he entered guilty pleas to two charges.  Appellant argues his plea was not made knowingly, voluntarily, and intelligently based on the trial court's misstatements at his plea hearing.  Appellant claims the court erred by overstating the maximum penalty he faced for one of the two counts and erroneously stating Appellant was not waiving the right to appeal.

{¶2}   Appellant also contends the court erred in its imposition of consecutive sentences and denial of his pre-sentence motion to withdraw his plea.  Last, Appellant avers he was denied the effective assistance of counsel.  For the following reasons, we affirm.

## Statement of the Case

{¶3}   Appellant was indicted in November of 2023 and charged with four counts: telecommunication fraud, a second-degree felony; engaging in a pattern of corrupt activity, a second-degree felony; aggravated theft, a third-degree felony; and receiving stolen property, a fourth-degree felony.  He entered a not guilty plea in November of 2023.

{¶4}   In March of 2024, the parties reached a plea agreement.  Appellant agreed to plead guilty to engaging in a pattern of corrupt activity and aggravated theft with the state agreeing to merge and move to dismiss the other two charges.  The parties did not agree on a jointly recommended sentence.  The court accepted the plea agreement. (March 20, 2024 Judgment.)

{¶5}   The transcript of the plea hearing held March 18, 2024 reflects the following. The proceeding began with the swearing in of a Mandarin interpreter since Appellant is a Chinese national.  Thereafter, the court permitted defense counsel to meet alone with Appellant and the interpreter off the record.  (March 18, 2024 Tr. 2-6.)

{¶6}   Once the hearing resumed, the following exchange occurred:

THE COURT: . . .[Y]ou have advised the Court that the defendant is willing to enter a guilty plea to two charges.

. . .

And those charges in Count II, engaging in a pattern of corrupt activity.

. . .

That is a second-degree felony maximum penalty of 11 to 16 ½ years in the penitentiary, a maximum fine of $15,000, and also a guilty plea to the charge in Count III being theft.

. . .

Maximum penalty 36 months in the penitentiary, a $10,000 fine.

And finally, the other charges would be merged and dismissed.

Is that the agreement, [prosecutor]?

[The prosecutor:]  It is. It is.

. . .

THE COURT:  And, [defense counsel,] is that your understanding of the agreement as well?

[Defense counsel:]  Yes, Your Honor.

THE COURT:  The Court will approve and conduct the plea hearing.

(March 18, 2024 Tr. 6-8.)

{¶7}    The court thereafter conducted the plea colloquy with the assistance of the interpreter.  The court confirmed Appellant was not a United States Citizen.  Appellant stated he does not understand the English language.  He said it is very difficult to read the English language.  Among other things, Appellant agreed he understood the nature of the charges and was satisfied with his trial counsel.

When addressing Appellant, the court then stated for Count II, *the Court will impose what is called a stated minimum sentence between two and eight years.*

. . .

THE DEFENDANT:  Understand.

THE COURT:  As an example, if I impose a two-year stated minimum term, the Court also – there will also be a maximum term which is three years; two plus one-half of two, equals three.

. . .

THE COURT: So, when he is finished – if he goes to prison, when he finishes, if he violates his supervision, the Department of Corrections can add time up to half of the minimum term that I talked about.

So in our example, they could add on one year.

. . .

THE DEFENDANT: Understand.

(Emphasis added.) (March 18, 2024 Tr. 14-16.)

**{¶8}** The trial court then reviewed the Constitutional Rights Appellant was waiving. The court stated:

Finally, as I said, you have the right to appeal the decision of this Court to the Courts of Appeals and the right to have counsel help you throughout that process. Do you understand?

THE DEFENDANT: Understand.

THE COURT: Now, you are not waiving your appeal rights. You are retaining those. Do you understand.

THE DEFENDANT: Understand.

(March 18, 2024 Tr. 17-19.) The court handed Appellant the original plea of guilty, which Appellant said he reviewed with his attorney. He then signed it during the hearing. (March 18, 2024 Tr. 20-21.)

**{¶9}** The trial court judgment, which outlines and adopts the plea agreement, states the following sentence for count two, the charge for engaging in a pattern of corrupt activity:

Minimum Term: Two (2) Years to Eight (8) Years in the Penitentiary

Maximum Term: Stated Minimum Term plus Fifty Percent of the Stated Minimum Term

Fine: $15,000

(March 20, 2024 Judgment.)

**{¶10}** The executed guilty plea, which contains a cooperation agreement, was filed under seal. It states in part that for count two, engaging in a pattern of corrupt activity, Appellant was facing two to eight years minimum and four to twelve years maximum. The

written agreement also states in part "the maximum sentence for counts II and III being served consecutively is 11-15 years." (March 20, 2024 Guilty Plea.)

{¶11} On May 21, 2024, the court issued a judgment stating the parties agree the money seized from Appellant on the date of his arrest belongs to a victim from the state of New Jersey. It ordered the money to be photographed as evidence and sent to New Jersey.

{¶12} The state moved to continue the sentencing hearing.

{¶13} A handwritten letter was filed with the court in June of 2024, which was purportedly sent by Appellant. It states in part that he is Christian with a strong work ethic. He indicates that had he understood that what he was doing was wrong, he would not have participated. He apologizes for his conduct; states he has never been in trouble before; and asks the court for probation.

{¶14} Appellant's counsel subsequently filed a motion to withdraw since Appellant was securing new counsel. (July 19, 2024 Motion.) The trial court initially overruled the request.

{¶15} At the July 29, 2024 sentencing hearing, defense counsel renewed his motion to withdraw. Appellant confirmed he wanted new counsel and a public defender was appointed to represent him. The sentencing was continued. (July 31, 2024 Judgment.)

{¶16} Appellant's new defense counsel filed a motion to withdraw the plea agreement. For cause, Appellant alleged his prior attorney had incorrectly used Google Translate during the client-attorney conferences, resulting in miscommunications and incorrect translations. As a result, Appellant alleged he did not know he was entering guilty pleas. Instead, he claimed he was signing something else. Additionally, Appellant claimed the translator participating in the plea hearing made it difficult for him to understand the legal process. (August 12, 2024 Motion to Withdraw Plea.)

{¶17} The trial court overruled the motion after a hearing. The court applied the factors in *State v. Xie*, 62 Ohio St.3d 521 (1992), and explained in part: "The thrust of Defendant's argument appears to be that while he understood the stated words as translated, he did not fully grasp the legal consequences of those words. There is, however, little support for Defendant's position." (August 19, 2024 Judgment.)

Case Nos. 24 BE 0037, 24 BE 0041

{¶18} On that same date, the court proceeded with Appellant's sentencing. Appellant was given the opportunity to speak. He was advised to make comments about his sentence. Appellant spoke at length about his confusion about whether and when to interrupt during the prior hearings if he did not understand something. He also described how he felt pressure to sign the document presented by his attorney on the day of the plea hearing. Appellant thought it was a cooperation agreement. He said he had asked for a written translated version from his prior attorney, but did not receive one. The trial court interrupted Appellant during the hearing, and instructed him to only address sentencing issues. (Tr. 31-35.)

{¶19} Appellant said he misunderstood. Appellant then stated he has no criminal history, he loves to work, and he is not a dangerous person. The court found consecutive sentences were not disproportionate to the seriousness of the conduct and were necessary to protect the public and punish him. The court found no genuine remorse was shown, but that this was his first felony conviction.

{¶20} For count two, engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), Appellant was sentenced to serve a six-year minimum term in prison. For count three, aggravated theft in violation of R.C. 2913.02(A)(3), the court sentenced him to 24 months in prison with both terms to be served consecutively. Thus, the minimum aggregate term was eight years with a maximum term of eleven years. The court stated in part that as part of his plea agreement, Appellant has "waived all of his appeal rights. . . . And counsel looks puzzled. I'm looking at Exhibit A attached to the Plea Agreement, Paragraph 6, 'The State and Defendant waive all appellate rights related to all provisions of this Plea Agreement.'" Defense counsel then objected to the imposition of consecutive sentences. (August 12, 2024 Tr. 38-42.)

{¶21} Appellant moved to stay his sentence, which the trial court overruled. Appellant filed a pro se notice of appeal and his counsel separately appealed. We consolidated the appeals. Appellant raises four assigned errors.

<u>Voluntariness of the Plea</u>

{¶22} Appellant's first assigned error contends:

"The trial court erred to the prejudice of Yu by accepting a plea of guilty that was not made knowingly, voluntarily, and intelligently."

**{¶23}** Here, Appellant contends the trial court erred by overstating the maximum penalty he faced for count two. He also claims the trial court erred by incorrectly advising him at the plea hearing that he was *not* giving up his right to appeal by entering a guilty plea.

**{¶24}** The state does not dispute these errors. Instead, it claims the court's mistake in reciting the potential maximum Appellant faced was of no consequence since the court substantially complied with Crim.R. 11, and there was no resulting prejudice. The state also claims because Appellant has appealed, there is no prejudice from this mistake.

**{¶25}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11 was adopted to give detailed instructions to trial courts on the procedures to follow before accepting guilty pleas. *State v. Barker*, 2011-Ohio-4130, ¶ 9.

**{¶26}** Before accepting a plea of guilty in a felony case, Crim.R. 11(C)(2) requires the trial court to inform a defendant of the constitutional rights he waives by entering the plea. To comply, a court must explain to the defendant that he is waiving: (1) the Fifth Amendment privilege against self-incrimination; (2) the right to a trial by jury; (3) the right to confront witnesses against him; (4) the right to compulsory process of witnesses; and (5) the right to be proven guilty beyond a reasonable doubt. Crim.R. 11(C)(2)(c). Failure to strictly comply with these constitutional requirements invalidates a guilty plea. *State v. Veney,* 2008-Ohio-5200.

**{¶27}** The court must also inform a defendant of several nonconstitutional rights, including the nature of the charge against him; the maximum sentence involved; and whether he is eligible for probation or community control. Crim.R. 11(C)(2)(a). *State v. Nero*, 56 Ohio St.3d 106, 107. When waiving nonconstitutional rights, substantial compliance is sufficient. *State v. Ballard*, 66 Ohio St.2d 473, 478 (1981).

> 'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty

plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect.' [*State v. Nero*, 56 Ohio St.3d 106, 108 (1995)] . . . To demonstrate prejudice in this context, the defendant must show that the plea would otherwise not have been entered. *Id.*

*Veney* at ¶ 15.

**{¶28}** However, a court that completely fails to comply with Crim.R. 11(C)(2)(a)'s requirement to explain the maximum penalty eliminates a defendant's burden to show prejudice. *State v. Sarkozy*, 2008-Ohio-509, ¶ 22. In *Sarkozy,* the trial court failed to inform the defendant about any postrelease control during the plea colloquy, which was part of the maximum penalty. Thus, the Supreme Court found no showing of prejudice was required. It vacated the plea and remanded the case. *Id.*

**{¶29}** As the state alleges, Appellant does *not* assert in his brief that he would not have otherwise entered a guilty plea. He does, however, identify this as the applicable test when assessing whether a defendant shows prejudice, and thus, we presume he is making this argument.

**{¶30}** The court initially advised Appellant during the plea hearing that for count two, Appellant was facing a maximum penalty of 11 to 16 ½ years in the penitentiary and a maximum fine of $15,000. Thereafter, during the same hearing, the court correctly advised Appellant the stated minimum sentence was between two and eight years. It again recited the correct sentence he was facing in its judgment approving the plea agreement.

**{¶31}** The guilty plea executed by Appellant is filed under seal. It correctly recites the potential sentences. It states for count two, engaging in a pattern of corrupt activity, Appellant was facing a minimum of two to eight years and four to twelve years maximum. It also states in part "the maximum sentence for counts II and III being served consecutively is 11-15 years." (March 20, 2024 Guilty Plea.)

**{¶32}** Appellant was subsequently sentenced within the permissible range. For count two, engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), Appellant was sentenced to serve a six-year minimum term in prison. For count three, aggravated theft in violation of R.C. 2913.02(A)(3), the court sentenced him to 24 months

in prison with both terms to be served consecutively. Thus, the minimum aggregate term was eight years with a maximum term of eleven years.

**{¶33}** Here, the trial court overstated the maximum penalty Appellant faced once during the plea hearing. The court, however, correctly stated the maximum penalty later on during that same hearing. Moreover, the written plea agreement reflected the correct amount. Appellant was not sentenced to the overstated amount and neither party raised the issue during the hearing as affecting his decision.

**{¶34}** In light of the foregoing, we conclude under the totality of the circumstances Appellant subjectively understood the maximum sentences he was facing. Moreover, we find no resulting prejudice from the error in this regard. For these reasons, we decline to find the court's misstatement constitutes reversible error.

**{¶35}** As for the second aspect of this assignment of error, i.e., the trial court erred by incorrectly advising Appellant at the plea hearing he was not forgoing his right to appeal or appellate rights by entering a guilty plea, the record shows the following exchange:

> [THE COURT:] Finally, as I said, you have the right to appeal the decision of this Court to the Courts of Appeals and the right to have counsel help you throughout that process. Do you understand?
> THE DEFENDANT: Understand.
> THE COURT: Now, you are not waiving your appeal rights. You are retaining those. Do you understand?
> THE DEFENDANT: Understand.

(March 18, 2024 Tr. 17-19.)

**{¶36}** The written guilty plea filed under seal and signed by Appellant and the trial court states in pertinent part:

> By pleading Guilty I admit committing the offense(s) and will tell the Court the facts and circumstances of my guilt. . . . *I understand my right to appeal my sentence*, my right to the assistance of counsel throughout that appellate process, and that any appeal must be filed within thirty (30) days of the date of my sentence. However, I also understand that if the Court accepts and imposes a stipulated and agreed sentence, I then also waive my appellate rights.

Case Nos. 24 BE 0037, 24 BE 0041

(Emphasis added.) (March 20, 2024 Guilty Plea.)

**{¶37}** Exhibit A to the plea agreement is captioned "PLEA AGREEMENT TERMS." It is also signed by Appellant, counsel, and the trial court judge. It lists 17 agreed upon items. Number 16 states: "The State and defendant *waive all appellate rights related to provisions of this plea agreement*." (Emphasis added.) (March 20, 2024 Guilty Plea, Ex. A.)

**{¶38}** The trial court made a blanket statement that Appellant was not waiving his appeal rights, but he was retaining them. Although Crim.R. 11(C)(2) does not require a trial court to inform a defendant that by pleading guilty, he is waiving certain rights to appeal, the court's general statement that Appellant was not waiving his rights to appeal was overly broad and partially incorrect.

**{¶39}** A guilty plea is a complete admission of guilt. *State v. Montgomery*, 2016-Ohio-5487. By pleading guilty, a defendant waives his right to a trial, admits to the material facts in the indictment, and authorizes the court to proceed to judgment. *Norton v. Green*, 173 Ohio St. 531, 533 (1962). As a result, a plea of guilty "effectively waives all appealable errors" at trial unrelated to the entry of the plea. *State v. Ketterer*, 2006-Ohio-5283, quoting *State v. Kelley*, 57 Ohio St.3d 127 (1991). The waiver includes alleged constitutional violations unrelated to the plea. *State v. Howard*, 2017-Ohio-9392, ¶ 69 (4th Dist.), *citing Tollett v. Henderson*, 411 U.S. 258, 267.

**{¶40}** In *State v. Tolle*, 2022-Ohio-2839 (4th Dist.), the Fourth District Court of Appeals found the defendant's guilty plea was *not* knowing, intelligent, or voluntary when the trial court erroneously advised the defendant he would retain the right to appeal all prior decisions. The defendant had filed a motion to suppress, which was overruled. Before accepting the guilty plea in *Tolle*, the trial court advised the defendant he would "still retain, even if you do enter a plea of guilty, . . . you'll keep the right to appeal any and all decisions of this court in your case, but the appeal must be timely filed." *Id.* at ¶ 4-5.

**{¶41}** Further, in *State v. Engle*, 74 Ohio St.3d 525, 527-28 (1996) the Ohio Supreme Court found the defendant's plea was not made knowingly or intelligently since her plea agreement was predicated on her belief that she could appeal the trial court's rulings. In that case, the defendant pleaded no contest based upon the erroneous

Case Nos. 24 BE 0037, 24 BE 0041

assumption that she could appeal the trial court's refusal to allow testimony on the battered woman syndrome and its refusal to dismiss the charges for insufficient evidence. The Ohio Supreme Court determined that because the defendant entered the plea upon trial counsel's, the court's, and the prosecutor's erroneous assumption that the defendant could appeal the issues, the defendant's plea was not knowingly or intelligently entered. *Id.*

**{¶42}** Here, the trial court advised Appellant at the plea hearing he would retain his appellate rights without limitation. Yet, Appellant's written plea agreement states in part, "I understand my right to appeal my sentence," which suggests Appellant's right to appeal was limited to an appeal from the sentence. Further, the written and executed cooperation agreement attached to Appellant's plea agreement states Appellant was waiving the right to appeal.

**{¶43}** Although the trial court may not be required to inform a defendant that a guilty plea results in a limited right of appeal, if the trial court chooses to inform a defendant of his or her right of appeal and incorrectly informs a defendant that he retains a full right of appeal, there is likely not substantial compliance.

**{¶44}** Nevertheless, Appellant does not identify any resulting prejudice. To demonstrate prejudice in this context, the defendant must show the plea would otherwise not have been entered. Unlike the defendant in *State v. Tolle*, Appellant did not move to suppress his statements made to the police before entering the plea agreement. Appellant does not identify any trial court decision he would have appealed had he not entered the plea agreement. There were no pretrial motions filed on Appellant's behalf before the plea agreement. As a result, this assigned error lacks merit.

Consecutive Sentences

**{¶45}** Appellant's second assigned error contends:

"The trial court erred by imposing consecutive sentences upon Yu absent the findings required by law in accordance with R.C. 2929.14."

**{¶46}** Appellant urges us to find the trial court erred in its imposition of consecutive sentences for three reasons. He claims the trial court erroneously relied on the fact that he was an illegal alien when imposing consecutive sentences. It erred by finding Appellant was a co-conspirator or that his actions were part of organized criminal activity.

Case Nos. 24 BE 0037, 24 BE 0041

Last, he contends the court's conclusion that Appellant lacked remorse is not reflected in the record. We disagree.

**{¶47}** The imposition of consecutive prison terms for multiple felony offenses is governed by R.C. 2929.14(C)(4), which is one of the provisions listed in R.C. 2953.08(G)(2)(a). Thus, we must affirm the imposition of consecutive terms unless we clearly and convincingly find the record does not support the trial court's findings under R.C. 2929.14(C)(4), which states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds [1.] that the consecutive service is necessary to protect the public from future crime or to punish the offender [2.] and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds [3.] any of the following:
>
> . . .
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶48}** "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

**{¶49}** Here, the trial court found all the prongs were satisfied and made the requisite findings at the sentencing hearing. The court stated in part that Appellant has a similar charge pending in the state of New Jersey, he committed the offenses as part of an organized criminal enterprise or for hire, his victim suffered significant economic harm, and Appellant appears to have entered the country illegally. The court also found there was no showing of genuine remorse and consecutive sentences were necessary to protect the public from future crime by Appellant and his group and to punish him. It also

Case Nos. 24 BE 0037, 24 BE 0041

concluded consecutive sentences are not disproportionate to the seriousness of his conduct. The court also found the harm caused was great and unusual such that no one single prison term adequately reflects the seriousness of his conduct. (August 12, 2024 Tr. 36-38.)

{¶50} The trial court likewise made the requisite findings in its written sentencing entry. It provides in part that Appellant has a similar pending felony charge in New Jersey; Appellant committed his offenses for hire or as part of an organized criminal activity; the victim suffered serious economic harm; Appellant entered the country illegally in 2019; and he has not shown genuine remorse. (August 19, 2024 Judgment.)

{¶51} The court also concluded consecutive sentences are necessary to protect the public from future crime and to punish him. It also stated consecutive sentences are not disproportionate to the seriousness of his conduct and the danger he possessed. The court found the offenses were committed as part of an ongoing scheme and as part of more than one offense, committed in other jurisdictions, and the harm was so significant that no single prison term reflects the seriousness of his conduct. (August 19, 2024 Judgment.)

{¶52} Thus, the court made the requisite findings both at the hearing and in its judgment. Further, we cannot conclude the record does not support the trial court's findings. The trial court found a lack of remorse. The trial court judge, as the trier of fact, was in the best position to view the Appellant's demeanor, facial expressions, and assess his credibility. *State v. Adams*, 2024-Ohio-2487, ¶ 91 (7th Dist.). Consistent with the court's conclusions, Appellant sent a letter to the court. In the letter, he apologized for his conduct and asked for probation, but did not accept responsibility for his behavior. He denied knowing what he did was wrong or illegal. The record does not bolster his claim he was regretful for behaving badly or the harm he caused.

{¶53} Moreover, the presentence investigation reflects that upon being apprehended by police, Appellant knew to cover up his behavior. He initially lied to the police and said the cash in his possession was from selling his vehicle. Appellant later admitted he was lying and that he had just "picked [the money] up from an elderly lady." Appellant acknowledged it "seemed suspicious for a stranger to hand him $30,000." Appellant also had a new pair of shoes in his vehicle, still in the box, valued at $895.

**{¶54}** As for the court's conclusion that Appellant was involved in organized criminal activity, it was discovered that the cash obtained from him upon his arrest belonged to a woman from New Jersey. Appellant was criminally charged in New Jersey in connection with that offense. Further, a text thread obtained from one of Appellant's phones seized by the police was captioned "Road to Riches." The content of the messages included addresses, people's names, and passwords. One of the phones also contained 19 video recordings depicting Appellant counting large quantities of cash.

**{¶55}** Last, the fact that Appellant entered the United States illegally was mentioned by the trial court. The trial court judge stated that although Appellant is not a citizen, the court "endeavored to guarantee his due process rights, both procedural and substantive." (August 12, 2024 Tr. 36-37.) To the extent the court considered Appellant's illegal entry into the country in fashioning its sentence, at least one Ohio court has held this may be pertinent as an "other relevant factor" under R.C. 2929.12(B) or (D). *See State v. Mateo*, 2002-Ohio-6852 (1st Dist.).

**{¶56}** In light of the foregoing, Appellant has not presented clear and convincing evidence that his sentence is contrary to law. Moreover, the trial court did not err in imposing consecutive sentences. This assignment of error is overruled.

<u>Presentence Motion to Withdraw Plea</u>

**{¶57}** Appellant's third assigned error contends:

"The trial court improperly denied Yu's motion to withdraw his plea because defendant established at the plea hearing that defendant has a reasonable and legitimate basis to withdraw a guilty plea before sentencing upon: (1) that defendant could not rely on information that he received from his initial attorney who handled the plea and (2) would have changed Yu's decision to plead guilty."

**{¶58}** Appellant claims he did not understand the legal concepts provided by his attorney at the time. He also asserts this same attorney did not spend sufficient time with Appellant to ensure he understood the proceedings and what he was signing. Appellant also claims the method of communicating was not working, and as a result, his motion to withdraw should have been granted.

**{¶59}** A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea before it rules on a presentence

motion to withdraw a plea. *State v. Barnes*, 2022-Ohio-4486. A trial court has discretion to determine whether there is a reasonable and legitimate basis for the defendant's withdrawal of his plea, which we should not disturb absent an abuse of discretion. *Id.* Absent an abuse of discretion on the part of the trial court in making the ruling, we must affirm. To find an abuse of discretion, we must find more than an error of judgment. We must find the trial court's ruling was unreasonable, arbitrary, or unconscionable. *State v. Adams,* 62 Ohio St.2d 151, 157 (1980).

**{¶60}** Yet, "when a defendant pleads guilty to one or more crimes and later wants to withdraw that plea before he has been sentenced, the trial court should permit him to withdraw his plea. This is the presumption from which all other considerations must start." *Barnes* at ¶21.

**{¶61}** We weigh nine factors when considering a presentence motion to withdraw a plea. None of the factors is conclusive. The factors a court should consider include, but are not limited to, the following:

> (1) the representation provided by defense counsel; (2) the defendant's understanding of the nature of the charges and the potential sentence; (3) the extent of the plea hearing; (4) the extent of the plea withdrawal hearing; (5) whether the trial court gave full and fair consideration to the motion; (6) the reasons for the motion; (7) whether the accused was perhaps not guilty or had a complete defense to the charge; (8) whether the timing of the motion was reasonable; and (9) whether the state will be prejudiced by withdrawal.

*State v. Grabe*, 2020-Ohio-4435 (7th Dist.), ¶ 15, citing *State v. Morris*, 2014-Ohio-882, ¶ 21 (7th Dist.), and *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist.1995).

**{¶62}** The plea withdrawal hearing reflects the following. An interpreter, appearing by phone, was sworn in. It is a different interpreter from the one present at the plea hearing. Defense counsel explained the basis for the plea withdrawal, stating Appellant's prior attorney instructed him to sign a form, which was the guilty plea, but Appellant thought he was only signing the cooperation agreement at that time. Defense counsel explained he believed Appellant grasped certain English words but that "understanding concepts was very difficult for him." In addition, Appellant claimed his

Case Nos. 24 BE 0037, 24 BE 0041

prior counsel spoke into Google Translate, which he claimed did not provide accurate translations.

**{¶63}** Appellant claimed law enforcement had also used the speaking feature on Google Translate, resulting in translation shortcomings. Thus, Appellant claims his Miranda rights were not knowingly and intelligently waived as a result and the advice provided by his first lawyer was deficient due to translation issues before he executed the plea agreement. (August 12, 2024 Tr. 4-6.)

**{¶64}** The state urged the court to disallow the motion to withdraw. It pointed out that Appellant was afforded an interpreter, and Appellant did not indicate he did not know what he was doing at the time of entering the plea. The state likewise emphasized how the court went to great lengths to secure the interpreter, and Appellant did not hesitate or give the court any indication he did not comprehend the nature of the proceedings.

**{¶65}** The prosecution likewise noted Appellant's cooperation agreement resulted in him spending six hours with law enforcement and during that time, Appellant did not express confusion about the terms of the plea. Instead, the state claimed Appellant was seeking to withdraw his plea because the information he provided to law enforcement was ultimately not corroborated, and thus, would not help Appellant secure a more desirable sentence. Appellant thereafter ended his cooperation. (Tr. 6-10.)

**{¶66}** In rebuttal, defense counsel pointed out that during the state's argument, the interpreter interrupted and asked for a definition of the term "co-conspirator." The defense urged the court to find there was not only a language barrier, but also a cultural barrier based on the nature of the court proceedings, which were foreign to Appellant as a Chinese citizen. Further, defense counsel stated for Appellant to raise an objection during the plea colloquy would have been "entirely improper for him within his culture." Defense also reiterated that Appellant did not knowingly waive his Miranda rights due to the language barrier. (Tr. 10-12.)

**{¶67}** The state responded and argued there was a strong probability Appellant would have been convicted in light of the evidence. It claimed when he was arrested, Appellant was at the victim's house to retrieve money from him. A cash counter was found in Appellant's vehicle. He also had a withdrawal slip reflecting $24,400 that he collected from another victim in New Jersey. The state alleged Appellant had two cell

phones on him at the time, which reflected others were also victimized by the same scheme.

**{¶68}** Further, the state claimed there are videos of Appellant recording himself using the cash counter and counting large quantities of cash. The videos were allegedly sent to others involved in the scheme to show Appellant retrieved the money, as well as the amount of money taken from the victims. The state claimed it would be prejudiced if Appellant were allowed to withdraw his plea since the state and federal authorities ended their investigations into Appellant after he entered his plea. The state also said Appellant had been encouraged to withdraw his plea by others involved in the conspiracy plus persons housed in the Belmont County jail. (Tr. 13-17.) Defense counsel countered stating inconvenience does not rise to the level of prejudice. (Tr. 18.)

**{¶69}** The trial court overruled the motion. The court applied the factors in *State v. Xie*, 62 Ohio St.3d 521 (1992), and explained in part: "The thrust of Defendant's argument appears to be that while he understood the stated words as translated, he did not fully grasp the legal consequences of those words. There is, however, little support for Defendant's position." The court emphasized that Appellant did not claim innocence or the existence of a defense. The court emphasized the time and effort it employed to ensure Appellant understood the legal process. (August 19, 2024 Judgment.)

**{¶70}** Moreover, the court relied in part on Appellant's letter mailed to the court asking for probation as showing he changed his mind about entering the plea agreement. Thus, it found his claims about not understanding the nature of the proceedings as well as the alleged translation errors and cultural differences were not credible.

**{¶71}** "A presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Barnes*, 2022-Ohio-4486, ¶ 13, quoting *State v. Xie*, 62 Ohio St.3d 521, 527. However, a defendant does not have an absolute right to withdraw his plea. *Id.* at paragraph one of the syllabus.

**{¶72}** As stated, Appellant's second trial counsel filed a motion to withdraw the plea agreement. The motion alleged his prior attorney had incorrectly used Google Translate during the client-attorney conferences, resulting in miscommunications and incorrect translations. As a result, Appellant claimed he did not know he was entering a guilty plea. Instead, Appellant thought he was signing a cooperation agreement.

Additionally, Appellant generally claimed the translator participating in the plea hearing made it difficult for him to understand the legal process. (August 12, 2024 Motion to Withdraw Plea.)

{¶73} Appellant's second trial counsel alleged during the "hearing on the motion to withdraw the plea" that Appellant's underlying defense was Appellant's Miranda Rights waiver was ineffective due to the language barrier. Defense counsel claimed law enforcement, like the first trial counsel, had used the speaking feature on Google Translate, resulting in translation difficulties. As a result, he claimed Appellant did not knowingly and intelligently waive his Miranda rights as a result. (August 12, 2024 Tr. 4-6.) Notably, however, appellate counsel does not raise this specific prejudice argument.

{¶74} A review of the plea and the motion to withdraw hearing show the proceedings were more than adequate. The trial court afforded both sides the opportunity to present arguments at the hearing on Appellant's motion to withdraw his plea. The trial court appears to have given full and fair consideration to the motion.

{¶75} Furthermore, the trial court provided Appellant with a full hearing and ensured he understood the rights he was foregoing by entering the plea agreement. The interpreter was available to Appellant and his attorney before Appellant entered his guilty plea. Thereafter, the court went through the necessary colloquy with the assistance of the interpreter.

{¶76} Appellant was afforded counsel, and although he claims his initial trial attorney was deficient, this contention is not palpable from the record. Appellant had counsel at the time of the plea, they met with the court's interpreter, and proceeded to enter the plea agreement. Appellant did not raise questions or otherwise object during the plea hearing. There is nothing evidencing his claim that he did not understand or that he did not feel comfortable questioning the proceedings.

{¶77} As far as the timing of the motion, Appellant's counsel emphasized it was timely in light of his recent retention and new representation.

{¶78} Appellant tended to allege he did not knowingly and voluntarily waive his Miranda rights. Appellant's second defense attorney opined he could have moved to suppress the statements Appellant made to law enforcement after he waived his Miranda rights. However, neither the strength of this argument nor what was obtained as a result

of the waiver is ascertainable from the record. Appellant did not offer testimony or evidence in support of his proposed motion to suppress, and the trial court found nothing on the record supported Appellant's claims in this regard.

{¶79} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *State v. Stumpf*, 32 Ohio St.3d 95 (1987), quoting *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph two of the syllabus. It is in the best position to observe a witnesses' demeanor, gestures, eye movements, voice inflections, and weigh credibility. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984). A written record does not capture a person's outward behavior, expressions, and attitude. *Id.*

{¶80} While Appellant's allegations of cultural differences, translation errors, and communication deficiencies sound plausible and arguably inequitable, the court was in the best position to ascertain the credibility of these contentions. As pointed out by the trial court, there was nothing of record corroborating these allegations, and the court found they were not credible since he sought to withdraw the plea once it was evident the state would not recommend probation.

{¶81} Although the parties did not have an agreed upon sentence, the state agreed to recommend an eight-year term. The cooperation agreement authorized the state to suggest a lower sentence if Appellant's cooperation resulted in the prosecution of other individuals. This evidently did not come to fruition. Instead, once it was clear the cooperation agreement did not result in the prosecution of others, Appellant sought new counsel and moved to withdraw his plea. Appellant's motion to withdraw his guilty plea appears to be a change of heart because he was not going to be sentenced to probation. *See State v. Peck*, 2015-Ohio-1279, ¶ 50 (7th Dist.) (a change of heart regarding a guilty plea and fear of the possible sentence is insufficient justification for the withdrawal of a plea).

{¶82} Upon considering all the applicable factors, we are unable to conclude the trial court abused its discretion in denying Appellant's motion.

Ineffective Assistance of Counsel

{¶83} Appellant's fourth assigned error contends:

"Yu was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendment[sic] of [sic] United States Constitution."

**{¶84}** To establish an ineffective assistance of counsel claim, an appellant must satisfy a two-part test. First, one must establish his counsel's performance fell below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. And second, an appellant must show he was prejudiced by counsel's deficient performance. *Id.*

**{¶85}** To establish one has been prejudiced by their attorney's performance, an appellant must show that but for counsel's errors, the result of the proceeding would have been different. *Bradley*, at paragraph three of the syllabus. "If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient." *Bradley*, at 142, citing *Strickland* at 695-696.

**{¶86}** An appellant bears the burden of proof on the issue of ineffective assistance of counsel, and a licensed attorney is presumed competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1999).

**{¶87}** Appellant claims his first trial counsel was deficient in connection with his guilty plea. Appellant asserts his new counsel explained to the court during the hearing to withdraw his plea agreement that Appellant was incapable of understanding English language concepts, in particular the concepts of duress and Miranda. He also avers his initial attorney did not spend enough time with him or ensure Appellant understood the plea concepts. Appellant also contends his first attorney's method of communicating was inadequate. Therefore, Appellant claims he could likewise not grasp the concepts necessary for him to make a knowing, intelligent, and voluntary plea.

**{¶88}** The state counters that the plea hearing shows counsel was not deficient. It shows Appellant and his counsel met privately with the interpreter at the beginning of hearing. Thereafter, Appellant agreed during the hearing that counsel had explained the rights he was foregoing and he was satisfied with his advice and representation. Appellant subsequently signed the plea agreement during the hearing after the court

Case Nos. 24 BE 0037, 24 BE 0041

explained the rights he was foregoing as well as the penalties he faced, among other things. However, Appellant did not interject or make it known that he was uncertain about the legal concepts or that he did not comprehend he was executing a guilty plea agreement.

**{¶89}** The state likewise claims Appellant's allegations of prejudice are lacking.

**{¶90}** When considering whether trial counsel's representation amounts to deficient performance, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* And "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Smith*, 17 Ohio St.3d 98, 100 (1985).

**{¶91}** During the plea hearing, Appellant was present with counsel. He met with the interpreter and defense counsel before the plea hearing began, and the interpreter participated for the duration of the hearing. The trial court conducted the requisite colloquy, and neither Appellant nor his counsel indicated there was a misunderstanding or questioned the nature of the proceedings.

**{¶92}** In light of the foregoing, we decline to find that Appellant's trial counsel was deficient, or he was prejudiced as a result. This assignment of error lacks merit.

Conclusion

**{¶93}** For the foregoing reasons, each of Appellant's assigned errors lack merit and is overruled. The trial court's judgment is affirmed.

Waite, J., concurs.

Hanni, J., dissents with dissenting opinion.

Case Nos. 24 BE 0037, 24 BE 0041

Hanni, J., dissent with dissenting opinion.

{¶94} With regard and respect to my colleagues, I must dissent from the majority opinion. I would find that numerous issues rendered Appellant's guilty plea unknowingly and unintelligently made.

{¶95} The transcript of the plea colloquy demonstrates language difficulties by both Appellant and his interpreter. Appellant told the court that he did not understand the English language and it was very difficult for him to read English. (Plea Tr., 9-10). Appellant also asked the court to clarify a number of issues concerning his potential sentence and community control. (Plea Tr., 13, 14, 15, 23). Moreover, the interpreter informed the court of her difficulty hearing and she asked for the court and Appellant to repeat themselves numerous times. (Plea Tr., 4, 5, 7, 8, 9, 17, 18, 23).

{¶96} These difficulties trigger challenges to the validity of Appellant's guilty plea. However, the validity of the plea faces greater danger when adding the trial court's incorrect statement to Appellant of the maximum penalty he faced for the corrupt activity charge. And even accepting that this error was later remedied, the court's incorrect statement that Appellant retained all of his appellate rights upon pleading guilty struck the final blow to the validity of the plea.

{¶97} The majority acknowledges the trial court's errors and the State conceded them in its brief. The majority even cites cases holding that a defendant does not voluntarily, intelligently, or knowingly enter a guilty plea under such circumstances. *See State v. Tolle*, 2022-Ohio-2839 (4th Dist.) (guilty plea not knowing, voluntary or intelligent when trial court informed defendant he retained the right to appeal all prior decisions); *see also State v. Engle*, 74 Ohio St.3d 525, 527-528 (1996) (no contest plea not knowing or intelligent when based on assumptions by trial court, counsel and prosecution that defendant could appeal evidentiary issues).

{¶98} Yet the majority finds no merit to Appellant's assertion here of an invalid plea due to these same errors. It holds that the written plea agreement remedied the errors because it contained the correct maximum penalty and a statement that Appellant understood his right to appeal his sentence. The majority finds that Appellant could infer from the written plea agreement the appropriate maximum penalty and that his appellate rights were limited to his sentence.

Case Nos. 24 BE 0037, 24 BE 0041

**{¶99}** However, Appellant stated that he did not understand the English language well and he found it very difficult to read the English language. At the hearing on the motion to withdraw his guilty plea, Appellant's new counsel represented that he immediately noticed upon speaking with Appellant that while Appellant could understand some words in English, he had difficulty understanding concepts. (Plea Withdrawal Hg., 5). New counsel questioned initial counsel's method of communicating with Appellant and Appellant's ability to understand the legal concepts in his case. It is difficult to believe that Appellant, who admitted difficulty in reading English, could infer from reading the plea agreement in English, that his appellate rights were limited to sentencing issues and not as the trial court presented them.

**{¶100}** Moreover, I would find that the factors in *State v. Fish*, 104 Ohio.App.3d 236 (1st Dist. 1995) favor granting Appellant's presentence motion to withdraw his guilty plea. The Ohio Supreme Court has held that presentence motions to withdraw guilty pleas should be liberally granted. *State v. Barnes*, 2022-Ohio-4486. Factors favoring plea withdrawal include initial defense counsel's use of Google Translate to attempt to communicate with Appellant. Dialect differences and interpretations could cause misstatements and misinterpretations. Appellant's understanding of the charges and potential sentences is also questionable considering the language difficulties and understanding of the English language as evidenced by the transcript. The reasons for the motion favor Appellant as well as the reasons are solid and the transcript demonstrates language difficulties. The timing of the motion was also reasonable. And finally, it appears that the State would not suffer prejudice if the motion were granted and the plea withdrawn.

**{¶101}** Based upon the *Fish* factors, the language difficulties at the plea colloquy, and counsel's representation that Appellant had difficulties understanding legal concepts in English, I would sustain Appellant's first assignment of error and reverse the judgment of the trial court.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**